N12-2339 U.S.A. v. Jeremy Duval Oral argument not to exceed 15 minutes per side Mr. Greenlee for the appellate. Good morning. Good morning, your honors, and may it please the court. This time I'd like to reserve four minutes for rebuttal. Your honors, in this case, a Michigan law enforcement officer appeared before a Michigan magistrate and applied for a Michigan warrant based on purported violations of Michigan law. And yet the district court held that that officer's knowledge of the defendant's compliance with state law was irrelevant to the inquiry as to whether probable cause supported the issuance of the warrant. We believe that this is reversible error, and we ask this court to reverse on that grounds. The first step of the inquiry is whether federal law or state law would govern what was before the district court. We believe, and we rely on $186,416 in United States currency, that it should be state law that governs the inquiry. And if the actions is legal under state law, then we think there is no probable cause for the issuance of the warrant. So the next step of the inquiry, of the analysis, is whether under Michigan law, whether if the defendant's compliance was included in the warrant, would that negate or destroy probable cause. We think People v. Brown, footnote 5, says it all. Knowledge that a person is in compliance with the Michigan Medical Marijuana Act must be included in an affidavit because such a situation would not justify the issuance of a warrant. So what was the error of the district court? The district court held when defense counsel attempted to establish first that the law enforcement officers went out to the Duval's property, that they inspected the marijuana growing operation, and they gave the Duval's advice on how to comply with Michigan law. And in fact, they attempted to establish that the Duval's acted on that advice, constructed, just as the police officers had instructed them to, constructed greenhouses to where nobody could see the medical marijuana, fenced, erected fences around the enclosures, put locks on the greenhouse fences, and hung the registrations from the locked enclosures. Let me ask you, putting aside the validity of the search warrants, can you cite any federal cases that conclusively support your position that the practitioner exception applies, the practitioner exception of 802.15 applies to state authorized medical marijuana growers? Your Honor, we recognize that this court recently held, and the government to its credit, cited in supplemental authority the Marson Q and Waldron case. We believe that case forecloses our argument on 802.2 of this, and we respect the court's decision. So we're not going to sit here and ask this court to reverse itself in the span of a couple months. Now returning to the district court's ruling on the legality of the warrant, here's what the district court said. The government's main argument is that we waived the argument. We don't believe that's true. We believe that we placed it squarely before the district court, and this court needs to look no further than the district court's actual ruling on this point. And it said, and this is a quote, regardless of the legality of that, or the conflict between state and federal law, the question before the court now is whether there was probable cause to believe that there, whether a magistrate judge could determine there was probable cause to believe that marijuana was in, growing in that greenhouse at the time, which in fact is a violation of federal law, regardless of Michigan's medical marijuana legislation. Now we believe that the district court was operating under a fundamental misconception and an erroneous assumption as to what law governed. If it's a state law warrant, which it's clear from the face of the warrant, that it's a state law warrant, there's no citation to federal law, there's no indication that the state magistrate passed on the question of whether it was in violation of federal law, we think it's clear that state law considerations should govern, particularly in a case like this, where something is legal under state law. And after all, we were in a Franks hearing, so we were trying to establish whether there were reckless omissions on the part of the law enforcement. And the second point by the government is that we failed to establish that Deputy Glick, in fact, had clear knowledge of the violation, that they were in compliance of Michigan law. In fact, our argument doesn't depend on whether or not Glick, whether it was established below that Deputy Glick had knowledge of their compliance with Michigan law. Our point is that the district court erred in preventing us from developing the factual predicate to make that argument in the first place. What we do know, though, about what Glick knew is that we know he testified that he worked for the Monroe County Sheriff's Office. That was the very first thing he testified to at the suppression hearing. We know that he signed a warrant in his capacity, and it was a Monroe County warrant. We know that he worked on Operation Hemp, and we know that he had ridden in a helicopter on Operation Hemp missions. We know that he was familiar with this very property. He said that he knew the property, and there was a residence on the property, because this was his former area of his patrol. We also know that he bragged about the bust to Officer Zimmerman, and we know that he, in fact, had consulted with law enforcement officers from the area. At page ID 384, he talks about how he consulted with a Detective Corey and a retired Lieutenant Cockey. What we know is that he talked to people in the neighborhood. He had done some homework. He did some research on this issue, this particular residence. We think it's, at the very least, it's a fair inference that he had knowledge that these other officers, who were essentially also local Omni officers, that they had come to the Duval's house, and as the Duval's maintain, and the government doesn't seriously dispute, they had given them advice on how to comply with Michigan law. Wouldn't you like to know that if you're a state court magistrate? Wouldn't that destroy probable cause? We think it would. We also know, with respect to this suggestion that Deputy Glick is in one silo and is insulated because he was deputized by the DEA, and there were these other local law enforcement officers. We know that's simply not the case. They're all Monroe County. They all worked in the same Omni task force. They worked in conjunction on these Operation Hemp missions. They all worked together. It's a fair conclusion. Our argument doesn't depend on his actual knowledge. We think the facts that were developed at trial should be considered something of a proffer. These are the facts that we could prove if this court were to remand back to the district court and allow us to pursue the inquiry, because clearly it's not irrelevant. You're relying on this footnote 5 of People v. Brown, and it says, if the police have clear and uncontroverted evidence that a person is in full compliance with the MMMA, that should be included in the warrant. Now, Officer Glick, though, found out that Gerald Duvall had a prior federal felony conviction for cocaine trafficking, right? That's correct. That made him ineligible to be a caregiver under the MMMA. That's correct, but he had knowledge that he was, in fact, not a caregiver. He was, in fact, a patient. And a patient can only have 12 plants, right? That's correct. Well, I mean, he observed from before he got the warrant that there were far more than 12 plants being grown in these two greenhouses. That's absolutely correct, Your Honor, but our point is that either Deputy Glick, and this was disputed at trial, there were three witnesses who testified that Deputy Glick, in fact, personally came to the Duvall's residence, and it was Deputy Glick that gave the advice. Now, we recognize that was a disputed fact at trial, but if it is the case, and we would like to develop this at the district court level, if it is the case that Deputy Glick knew that it wasn't just Gerald Duvall who was growing in those greenhouses, but it was his son, Jeremy Duvall, and his daughter, Ashley Duvall, both of whom had registrations to grow as caregivers and patients, then there is no violation of Michigan law, and there would be no probable cause in that scenario. Look, even if this court holds that we waived the argument, we don't believe we did. We think that it would be a plain error. It's subject to plain error analysis, and we think, number one, there's an error. Number two, it's plain. If you look at the face of the warrant, it's a state court warrant. The government doesn't seriously contend otherwise. And number three, it affects substantial rights. There can't be any right more substantial than Gerald Duvall having to serve 10 years in a federal penitentiary. And four, it seriously affects the integrity of the judicial process. Our argument on that point is threefold. First, we believe that you can't do an end run around Rule 41, which says that if you're proceeding in a federal prosecution, you have to either appear before a federal magistrate, or alternatively, there has to be some showing that there was no federal magistrate reasonably available. The government hasn't even responded to that argument, and there was no showing that there was no federal magistrate reasonably available. But the bigger point is if we take a step back here, the government has released a number of the Department of Justice memoranda saying, we're not going to prosecute people who are not in compliance, with state law, and yet here we are. They were in compliance with state law, and the government's bringing a prosecution. We think that seriously affects the integrity of the judicial process. Thank you, Mr. Greenlee. Good morning, Your Honors. May it please the Court, my name is Patricia Gaedeke, and I represent the United States. I find these arguments confusing, and so my plan was to leave the waiver and forfeiture arguments to the briefs, and try to explain why the district court was correct to deny suppression, because the warrant was adequate, and the suppression motion was not well taken. If the Court wants me to address the waiver arguments, I certainly will. But I do want to say one thing about what may be tied into waiver, and that is that federal law always governs the admissibility of evidence in a federal prosecution. It may be that a state warrant is issued by a state magistrate, but when the evidence is offered in a federal prosecution, the Fourth Amendment is what governs. And the Fourth Amendment requires only that there is a warrant issued by a neutral and detached magistrate, and that it's based on a finding of probable cause that there will be either contraband or evidence of a crime found in the place to be searched. I didn't cite a case for that proposition in my brief, but if the Court wishes me to give one, there's a Sixth Circuit case called the United States v. Beals, 698 Fed 3rd, 248 at 263. So it is a federal question, but the confusion arises because of this idea that there was a Frank's omission from the affiance failure to say that some law enforcement officer had visited this property and assured the property owners that they were in compliance with Michigan medical marijuana law. There was a visit. It happened about nine months before the search warrant was applied for. The visiting officers did not include Monroe County Sheriff's Deputy Glick, who was the affiant on the search warrant. Glick didn't know anyone had been out there until after he swore the affidavit and the search warrant had been executed. The officers who made the visit were part of something called Operation Hemp, which is a state police initiative that apparently on three days, one in each of three months, August, September, and October, they get helicopters from the National Guard and some other federal source, I think, and they fly around certain areas of Michigan and look for marijuana growing outdoors. When the helicopters see what they think is marijuana growing, they communicate with someone on the ground who goes out and checks it out. In this case, they saw marijuana growing on what turned out to be Mr. Duval's property and they communicated with a Monroe City police officer named Zimmerman and another officer who went on the property and talked to Gerald Duval and his housekeeper. They only stood on the deck of Mr. Duval's house and what they saw was a garden plot outside. Zimmerman says he thought there were about 40 plants there. Mr. Duval was pretty upset about them coming up to his property, but when he immediately said, oh, we're growing medical marijuana and we have patient proof that we're medical marijuana patients, he went in the house and he came back with evidence that's all over the place about this, but probably two or three applications for marijuana patient permission. Then Zimmerman said, well, I don't see a problem. Really, each patient's plants should be kept separately. That's a good idea. And then he left. There was another officer there, but that other officer explained that he usually did auto theft and he was just along his back up. You're saying there were no greenhouses at the time? No, there were no greenhouses. There was an outdoor garden plot, very small. I mean, relative to what was in the greenhouses, very small. Zimmerman said he's seen marijuana growing a lot and his estimate was no more than 40 plants. You had three patients entitled to 12 apiece? Yes. When you say that he observed a garden plot, does the record indicate that there was no further examination of any other buildings or structures on the premises, which might not have been obvious, but that might have considered a greenhouse? That's correct. They did not leave the deck or porch of the house, Zimmerman and his partner. They stood on the deck. They talked to Mr. Duval. They observed this garden plot, which was fairly close to the house. My question is whether from that vantage point they had the opportunity to observe whether or not there were any other structures on the premises which might have been concealing marijuana grows. They could see a pole barn. In fact, the following June it turned out there was marijuana growing evidence in that pole barn. There was drying marijuana and all sorts of marijuana evidence in that pole barn, but they did not leave the porch. They didn't have a search warrant. They weren't invited to look around the property. As far as they knew, there was this garden plot and evidence that the property owners had permission to have medical marijuana, and they left. They did not do any follow-up investigation, and that's clear in the record. Your opposing counsel relies on People v. Brown, a 2012 decision of the Michigan Court of Appeals. What's your response to that authority? Of course, we don't think it applies, although it does in a sense, in the sense that it could be a Frank's omission under Michigan law. The logic of it is that if an affiant who says, here is probable cause to believe that we will find evidence of marijuana trafficking on a property, actually knows and withholds information that says the only evidence of marijuana trafficking is evidence that shows also full compliance with Michigan medical marijuana law, that would mean under Michigan law that there isn't any trafficking, because under Michigan law it says if you comply with the law and you're doing only things in compliance with the law, it's not considered trafficking. Of course, Michigan law still does consider marijuana trafficking otherwise to be a criminal offense, and so what Glick's affidavit says is that under Michigan law, there is probable cause to believe that there's marijuana and evidence of marijuana trafficking to be found on this property, and he bases that on the fact that the property owner is a person who has a cocaine distribution conviction, so he can't be a caregiver under Michigan law, and he also says that there are what appear to be more than 100 plants, and that would be far more than even someone who was allowed to be a caregiver could have. So while hypothetically there might be something to this notion under Michigan law that it would be destructive of probable cause to withhold information of compliance, there's nothing in the record in this case that could possibly support a finding that there was a basis to say that Glick had such information. As I understand Mr. Greenlee's argument, he says that it would be a reasonable inference, I suppose, that Deputy Glick would know that the other family members had the right to grow X amount of plants as caregivers and patients, and kind of if you add those plants up, it seems to get to about the lawful amount that he knew, or it's reasonable to infer that he knew because he was part of this overall team, whatever the name of it is, at various points that work with the DEA and county authorities, so there's an inference that Deputy Glick knew. I disagree. There are no facts from which you can make that inference. First of all, Deputy Glick was a road patrol sheriff until December of 2010, that is after this visit was made and shortly before the affidavit. Second, he had no reason to know that there were other people who might have been using Gerald Duvall's property to grow medical marijuana. The information he looked up said that Gerald Duvall was the property owner. Jeremy Duvall lived in his own house on a different piece of property. It was nearby, and Gerald Duvall also owned that property, but he didn't live there, and it's not really clear whether Ashley lived there or not, but these are not things that you can expect Deputy Glick to have known or to have any reason to find out. It's also not reasonable to say, as the defendants suggest in their reply brief, that he should be chargeable with the collective knowledge of all other law enforcement in Monroe County. There's some confusion about whether he actually worked with any of the people who made that visit or any of the people who had other information about the Duvalls, but as I said, Deputy Glick was on road patrol from 2007 to December of 2010. He was not in the narcotics enforcement world until then. Does your argument change at all if, just for purposes of argument, Deputy Glick knew about this previous visit and knew that these other officers had said that here's what you need to do to have a lawful operation? Not really. Why not? It's just easier to decide that there's no factual basis, because those officers never said, you're in compliance. The reason the district court allowed all of this evidence at trial, which, by the way, was not part of the suppression hearing, the reason he allowed it at trial is that the defendants represented that they were going to be able to make out an entrapment by estoppel defense, and specifically that they were going to be able to show that a federal officer had given them advice that they were going to be exempt from federal law enforcement. So the judge gave them the opportunity to make that showing and reserved a decision on whether he was going to give an entrapment instruction at trial. I would argue that they did not make out a basis for an entrapment instruction, but got it anyway, and the jury rejected it. In general, by the way, I'm just curious, why did the Department of Justice even bring this indictment? I mean, there was an October 19, 2009 memo from the Department of Justice saying, in general, they're not going to prosecute medical marijuana users as an inefficient use of federal resources. I think that memo said, we're not going to prosecute caregivers and patients because that just doesn't make sense. But General Duval was not a caregiver. General Duval was a man who was growing hundreds of marijuana plants, and you may not have noticed in the record, because it's not really relevant to the issues on appeal, but there were drying plants, there was cut-up marijuana, there were records of breeding marijuana, all different kinds of seeds and crossbreeds, and there were records, written records, that went back a number of years. And the original tip was, he was bragging in the town about all the money he was making selling marijuana. The patients who came in and testified on behalf of the defense said that they were getting their medical marijuana for free. Each one of them said that. So this was not a medical marijuana caregiver case, and there's no reason why either the state or the federal government wouldn't want to prosecute this particular case. Unless the court has other questions. Your Honors, first one broad comment, and then several specific points in response to the government presentation. First, we can't sit here and pretend this was a federal warrant. This was a state court warrant. And when activities are legal and conduct is legal under state law, then the district court should stand in the shoes of the state magistrate judge and look to whether the information presented to that state magistrate judge gives rise to probable cause under state law. Because of course the state magistrate judge wasn't asked to interpret whether it was legal or not under federal law. Holding otherwise would write the warrant clause right out of the Constitution. That's the broader point. As to whether Deputy Glick was a narcotics officer, he was. He testified that he participated in Operation Hemp. He was a member of the Omni team. In fact, there were three witnesses at the trial that said Glick himself personally came to the residence. So this suggestion that Glick had no knowledge of it or didn't know anything about it, that's just not the case. With respect to him being a road patrol officer, nothing prevents him from being a road patrol officer. And at the same time, once a month, just like all the other officers, he participated in Operation Hemp. I direct the court to Detective Hart, who testified that he was in an auto theft unit, which by the way is a single man unit. This is not Detroit, Your Honors. This is closer to Mayberry. This is a small town. Everybody knows each other. 150,000 people in the entire county. So it's not beyond the pale that these law enforcement officers, particularly the ones who do Operation Hemp, would communicate with each other. Once again, our argument doesn't depend on whether Glick himself, whether it was clear from the record that Glick knew. All we're asking this court to do is allow us to develop those facts on remand. This is a finding of fact by the district court. First, there was a history of contact with law enforcement. The district court characterized the operation as one of the worst kept secrets in the county. The district court also said that there was some sort of acknowledgement that there was a medical marijuana operation going on here. The district court basically found that law enforcement knew about this operation. So it's not a far cry from that to charge Glick with the knowledge, if in fact he wasn't there in the first place and the district court expressly found that Glick had credibility issues. Wasn't there a Franks hearing to air all this? That's exactly where all these facts were aired. That's where they developed all these facts. In fact, once again, we tried to, and we didn't handle the case below, but defense counsel tried to reopen the proofs and prove, number one, that these officers came to the Duval's house. Number two, they instructed them on how to comply with Michigan marijuana law. Number three, that the Duval's in fact did comply with Michigan marijuana law. That's why they built the greenhouse. Of course, there weren't greenhouses there in the first place, but they built the greenhouses to comply with the advice given to them by the Michigan police. The final point is that the government's argument is that they were somehow out of compliance with the Michigan medical marijuana law. There was no record of that. If the district court in fact had found that, they would have never given the entrapment by estoppel instruction. We believe that the district court found that they were in fact in compliance with the Michigan medical marijuana law. Otherwise, they would have never received the entrapment by estoppel instruction in the first place. Your honors, we would ask this court to reverse and remand for the proceedings in the district court. Thank you.